IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

ADDIE STOVER

VS.                                                          CIVIL ACTION NO. 2:05cv388-KS-MTP

HATTIESBURG PUBLIC
SCHOOL DISTRICT

## ORDER

This cause remains before the Court on Defendant Hattiesburg Public School District's Motion for Attorney's Fees as Prevailing Party [99], Response thereto filed by Plaintiff Addie Stover [102], Reply by Hattiesburg Public School District [110], together with supporting memoranda and further, on Plaintiff's Motion for Relief Pursuant to Rule 54(d) (2) of the Federal Rules of Civil Procedure, and the Court after considering all of the above together with the prior proceedings herein, applicable statutory and case law, and being fully advised in the premises, does hereby find that Defendant Hattiesburg Public School District is entitled to an order requiring Plaintiff Addie Stover to reimburse it for attorney's time and costs expended in defending this litigation in an amount that will be later determined by the Court, following an opportunity for Ms. Stover to present, as per her request, adversary submissions pursuant to Rule 54(d)(2)(C). The Court's analysis of the request of Defendant is as follows.

In its Motion for Attorney's Fees, Hattiesburg Public School District ("HPSD") alleges that Plaintiff Addie Stover's ("Stover") claims were frivolous, unreasonable, and groundless and additionally claims that same were pursued in bad faith even after Stover and her attorney were aware of the frivolousness of the claims. In support of its claim of attorney's fees, HPSD states

that there are certain uncontroverted facts that support its claim that Stover's lawsuit was frivolous, unreasonable and groundless. The uncontroverted facts alleged are as follows, to-wit:

    A.    That Mr. Oubre was dramatically more qualified to hold the position granted him than Ms. Stover;

    B.    That every witness deposed and who testified at trial confirmed that Plaintiff in no way performed the same or equal work as Alan Oubre;

    C.    That Plaintiff knew before suing and before proceeding to trial that as a practical matter a license would be required to get the job and to do the job;

    D.    That Plaintiff flagrantly violated the District's rules and when called on it characterized the District's actions as "retaliation";

    E.    That despite numerous depositions being taken, no deponent supported Plaintiff's claims that she had been discriminated against or retaliated against or that she had reported any discrimination prior to her first EEOC charge; and

    F.    That in spite of the obvious baselessness of the claims, Stover continues to litigate.

## FACTUAL BACKGROUND

This Court went through an extensive factual background in Document #83, the Memorandum Opinion and Order on Defendant's Motion for Summary Judgment, and the factual background will not be extensively restated. Stover is an African-American female who had been employed initially by the school district as a part-time secretary and had worked for the school district for a number of years, working herself up to a position with the title of "Administrative Assistant." HPSD had another position called "Administrative Assistant to the

Superintendent and Associate Superintendent" that had been filled through the years by Ph.D. level educators, and the two who had filled the position before Mr. Alan Oubre were female, one African-American and one Caucasian.[1] In 2003, based on the testimony of then Superintendent Dr. Davis, the position of Administrative Assistant to the Superintendent was filled after a two year vacancy. His testimony was that the finances were not available to fund the position and he tried to do the work himself, but after two years the "finances improved" and he sought and hired Alan Oubre, a Caucasian male, for the position. Stover claimed that she was replaced by Oubre who was paid a much higher salary and asserted race and gender discrimination claims and a retaliation claim all under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq. and a claim under the Equal Pay Act, 29 U.S.C. § 206(d)(1). Following extensive discovery, the case was tried with a jury verdict for HPSD on all counts.

## STANDARD FOR ASSESSMENT OF ATTORNEY'S FEES

In this circuit the standard for assessing attorney's fees in a case such as this is established by *Christianberg Garment Company v. Equal Employment Opportunity Commission*, 434 U.S. 412, 98 S.Ct. 691, 54 L.Ed 2d 648. The EEOC sued Christianberg Garment Company alleging civil rights violations and after Christianberg prevailed it sought an award of attorney's fees as the prevailing party. In its analysis of the claim for fees the Supreme Court distinguished the standard for attorney's fees being awarded to a prevailing plaintiff from attorney's fees awarded to a prevailing defendant. Fees are ordinarily awarded to a prevailing plaintiff in a Title VII

---

[1] There was some dispute in the evidence as to what the precise titles of the two jobs were at the different times during the relevant time period. At any rate, job titles are not determinative of Title VII or Equal Pay Act cases; the relevant inquiry is based on the actual job requirements themselves.

proceeding because the plaintiff is acting as the chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority, and when the District Court awards attorney's fees to a prevailing plaintiff it is awarding them against a violator of federal law. *Newman v. Piggy Park Enterprises*, 39 U.S. 400, 88 S.Ct. 964, 19 L.Ed. 2d 1263 (1968).  The Court further stated that a successful defendant seeking counsel fees under Section 706(k) must rely on different equitable considerations.  Congress did not intend to adopt the "loser pays" policy, but did intend by the statute to discourage frivolous suits and to diminish the likelihood that unjustified suits would be brought.  Congress further intended to have a way to protect defendants from burdensome litigation having no legal or factual basis.  Hence, the *Christianberg* standard is stated by the Court as follows:

> In sum, a District Court may, in its discretion, award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.
>
> In applying these criteria, it is important that a District Court resist the understandable temptation to engage in *post hac* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.  This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.  No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predicable.  Decisive facts may not emerge until discovery or trial.  The law may change or clarify in the midst of litigation even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.  *Christianberg* at 421-422.

   While plaintiffs are given a significant incentive to pursue Title VII claims, there must be some protection from frivolous, unreasonable, or groundless cases brought by plaintiffs. Hence,

the statute allowing attorney's fees to be assessed for prevailing defendants.  If HPSD can establish that Stover's action was frivolous, unreasonable, or without justification even though not brought in subjective bad faith, then it is entitled to recover attorney's fees.  The recovery can be for fees expended from the beginning of the litigation if it is determined to be frivolous, unreasonable or without foundation from the outset, or from such time during the litigation process that the plaintiff and her attorney should have known that the litigation was such.  The District Court will make this determination by looking at when plaintiff should have known that she had no chance of success.

## ANALYSIS

### *RACE AND SEX DISCRIMINATION CLAIMS*

At first blush Stover's case appears to be a classic race and sex discrimination claim. She is a member of a protected class (African-American female) and she is allegedly replaced by a white male paid twice her salary.  If this had been the case, HPSD would have justifiably been subject to a large verdict in Ms. Stover's favor on the race and gender discrimination claims under Title VII.

However, the facts developed through discovery and at trial demonstrated that Stover's claims were without foundation.

A great deal of testimony was given by Stover comparing job duties, titles, and alleged experience. There were charts and comparisons of general duties of both Stover and Alan Oubre, the man she claimed replaced her. She and Oubre may have had similar job titles but the jobs were not similar. While she was competent and qualified for her job, she was a support and clerical type employee while Oubre was an administrator in the truest sense.  Numerous

examples of the diverseness of their jobs were brought out during the testimony. For instance, Stover claimed that both she and Oubre attended board meetings and for part of the time that was true. However, her duties at the board meetings were to make coffee, make copies, take the minutes, prepare agendas and Mr. Oubre's purpose was to be available to answer substantive questions regarding administrative and educational issues for the board.

The Court will not go through all of the testimony of Stover - it lasted almost three days - but at the end of her case in chief all she had established was that her job and Oubre's job were not the same. The testimony of every other witness clearly established that Oubre did not replace Ms. Stover, but filled a position that had been vacant for two years and that had formerly been filled by Ph.D. level educators.

The other testimony regarding educational qualifications of Oubre and Stover, the license required for Oubre's job, etc., all pointed to the fact that Stover was not even in the same league as Oubre and that her job with the HPSD was not in the same league as the Administrative Assistant to the Superintendent, the position filled by Oubre.

### *RETALIATION CLAIM*

Stover filed her EEOC charge in 2004 and continued to work for the HPSD until she quit in 2005. During this period Stover's claims were pending against HPSD. This was obviously not an ideal situation and during this period Stover claims that she was retaliated against in a number of ways, including unreasonable refusals for leave time, made to punch a time clock and disciplined because of persistent tardiness. Here again, Stover's uncorroborated claim was systematically refuted by the testimony of the other witnesses and the documentary evidence introduced.

The testimony was that Ms. Stover's job performance and attendance started to deteriorate after she filed the complaint and, hence, the reason for the beginning and increase in discipline. She was repeatedly counseled by other administrators regarding her performance and in spite of the facts, Ms. Stover continued to cling to the belief that there was retaliation. As with the other Title VII claims, the only evidence establishing a retaliation claim was Ms. Stover's testimony, which was refuted by every other witness and the documentary evidence.

This Court went through an extensive analysis of the requirements for discrimination and retaliation claims in its Order on HPSD's Motion for Summary Judgment.  While Stover's response to the motion created a sufficient question of material fact to withstand summary judgment, when her statements were tested by cross-examination and testimony of other witnesses and the documentary evidence it was shown to be without basis.

Plaintiff sought to establish that some statements allegedly made by Mr. Hopkins and Mr. Davis established a *prima facie* case.  This was not the case.  While Mr. Hopkins did not testify at trial, the only testimony regarding his statements came from Stover, and the witnesses that did testify failed to corroborate her allegations.

Retaliation is only actionable if "a reasonable employee would have found the challenged action materially adverse, which in the this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Sante Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2415 (2006)(internal quotations and citations omitted).  Stover did not establish retaliation. The proof was that HPSD required her to come to work on time and follow the leave policies of the school. These certainly were not unreasonable.

7

## EQUAL PAY ACT CLAIM

Under the Equal Pay Act an employer is prohibited from gender based discrimination where the jobs performed require equal skill, effort, and responsibility and are performed under similar conditions. 29 U.S.C. § 206(b)(1). In order to establish a *prima facie* case it was incumbent upon Stover to show that she was paid less than a male employee in a similar position under similar working conditions. *Corning Glass Works v. Brennon*, 417 U.S. 188, 195 (1974). Plaintiff totally failed to establish that she was similarly situated to Alan Oubre. The proof was that she was not similarly situated to Alan Oubre and hence had no Equal Pay Claim Act.

## CONCLUSION

For the reasons above described, the Court finds that Stover's claims were frivolous, unreasonable, or groundless and that she should have known same at some particular point in the litigation, either from the outset or sometime during the discovery process. The summary judgment was denied based on Stover's own statements and the fact that summary judgment was denied is not determinative of the outcome of this request for fees. Stover was the only one who could fully know the validity and reasonableness of her own statements. The Court, pursuant to the request made pursuant to 54(d)(2)(C) will allow Stover the opportunity to submit adverse submissions regarding the amount of attorney's fees and submissions regarding when she reasonably should have become aware of the absence of foundation for her claim. She will be given fifteen (15) days from the date of this order to submit same and HPSD will be given an additional ten (10) days for a reply.

SO ORDERED this the 16th day of April, 2007.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE